IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY GREEN, | § | |
| | § | |
| *Petitioner,* | § | |
| | § | |
| V. | § | Civil Action No. 3:15-CV-02197-M-BH |
| | § | |
| LORIE DAVIS, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| *Respondent.* | § | |

**FINDINGS, CONCLUSION AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3-251*, this death penalty habeas case has been automatically referred for findings, conclusions, and recommendation. Before the Court is the *Opposed First Motion for Funding*, filed on April 11, 2016 (doc. 8). Based on the relevant findings and applicable law, the motion should be denied.

**I. BACKGROUND**

Gary Green (Petitioner) was convicted of killing his wife, Lovetta Armstead, and her six-year-old daughter, Jazzmen Armstead. *Green v. State,* No. AP-76,458, 2012 WL 4673756, at *1 (Tex. Crim. App. Oct. 3, 2012). The Texas Court of Criminal Appeals ("CCA") summarized the evidence on direct appeal:

> [Petitioner's] conviction for capital murder is supported by his own confession. In it, he explained that the week before the offense, he had discovered that Lovetta was going behind his back to get their marriage annulled. On the day of the offense, September 21, 2009, Lovetta wrote two letters to appellant, telling him that it was time for them to part ways and that he needed to move out. Appellant felt betrayed by his wife's actions and wrote his own letter in response, detailing his plan to "take five lives" that night, including his own.

*Id.*

> [Petitioner] stabbed Lovetta more than twenty-five times, covering the bathroom in blood, and then drowned Jazzmen in the bathtub while her hands and feet were tied. Appellant then re-dressed, in all black, and went to pick up Lovetta's sons from their church program. After stabbing the younger son, Jerrett, appellant attempted to stab J.T., but missed. Appellant stopped short of murdering the entire family, as he had intended, only because the young boys pleaded for their lives, promising they would not tell anyone what had happened.

*Id.* at *30.

During the punishment phase, Petitioner's counsel presented testimony from family members and experts about Petitioner's state of mind at the time the offense as well as his mental illness. The family had an extensive history of mental illness, and Petitioner had a history of mental illness going back to his teen years. Shortly after the offense, Petitioner "appeared to be drugged or under anesthesia," "wanted to go to sleep and never wake up," and was remorseful and delusional. *Id.* at *29. Counsel also presented expert testimony from Dr. Kellie Gray-Smith, a licensed specialist in school psychology and special-education coordinator, and Dr. Gilbert Martinez, a clinical neuropsychologist, to show the severity of his mental illness and possible explanations for his lack of treatment. *Id.* at *29-*30. Petitioner received additional expert assistance prior to trial from Dr. Kelly Goodness, Dr. Christy Compton, and forensic psychiatrist Dr. David Self. (doc. 8 at 6-8.)

Petitioner now seeks funding in the amount of $27,000 for expert or investigative assistance.

## II. FUNDING

Courts may authorize attorneys in death penalty cases to obtain investigative, expert, or other services upon a finding that such services are "reasonably necessary" for representation. *See* 18 U.S.C. § 3599(f). In the Fifth Circuit, the term "reasonably necessary" is construed to mean that a petitioner must demonstrate "a substantial need" for the requested assistance. *Riley v. Dretke,* 362 F.3d 302, 307 (5th Cir. 2004) (quoting *Clark v. Johnson,* 202 F.3d 760, 768 (5th Cir. 2000)) (internal

2

quotation marks omitted). The denial of funding "has been upheld 'when a petitioner has (a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when the sought after assistance would only support a meritless claim, or (c) when the sought after assistance would only supplement prior evidence.'" *Woodward v. Epps,* 580 F.3d 318, 334 (5th Cir. 2009) (quoting *Smith v. Dretke,* 422 F.3d 269, 288 (5th Cir. 2005)). "A petitioner cannot show a substantial need [for funding under § 3599(f)] when his claim is procedurally barred from review." *Riley,* 362 F.3d at 307 (citing *Fuller v. Johnson,* 114 F.3d 491, 502 (5th Cir.1997)).

District courts have broad discretion to grant funding up to $7,500 for expert and investigative services on behalf of a petitioner if the court determines that the services are reasonably necessary for his representation. *See* 18 U.S.C. § 3599(f). Beyond that amount, the applicant must also show that the excess funding is "necessary to provide fair compensation for services of an unusual character or duration" and receive approval from the chief judge of the circuit. 18 U.S.C. § 3599(g)(2).[1]

Petitioner seeks $27,000 for expert or investigative assistance to conduct a new mitigation investigation in order to support a claim that trial counsel was ineffective in failing to investigate and present mitigating evidence at his trial. (doc. 8 at 4-5, 21-22.) He argues that funding is authorized to bring his claims within the exception to procedural bar created in *Martinez v. Ryan,* 132 S.Ct. 1309 (2012), as applied to Texas cases in *Trevino v. Thaler,* 133 S.Ct. 1911 (2013), for claims of ineffective assistance of trial counsel that were not presented to the state court because of the ineffective assistance of state habeas counsel. He also asserts "another possible IAC claim for failure to challenge the constitutionality in executing [Petitioner] who was mentally ill at the time

---

[1]Recognizing the need for circuit approval for this amount, Petitioner structures his request to allow the first $7,500 to be paid without circuit approval. (doc. 8 at 5.)

of the offense." (doc. 8 at 5.)

**A.     No Procedural Bar**

Respondent first asserts that Petitioner's mitigation claim is not procedurally barred because it was presented in the prior state court proceedings and adjudicated on the merits. She argues "that state habeas counsel made the same arguments about trial counsel's effectiveness regarding the mitigation investigation, but, with different mental health issues. Thus, [this] claim has already been investigated, formulated, and set forth in prior state court proceedings." (doc. 10 at 2-3.) She also argues that because the claim was adjudicated on the merits in state court and not subject to the procedural bar addressed in *Martinez*, this Court would be required to afford deference to the state court findings on such an adjudicated claim under 28 U.S.C. § 2254(d), and evidence presented in federal court would have no bearing on this issue. (doc. 10 at 4 (citing *Cullen v. Pinholster,* 563 U.S. 170, 185 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.")).

Petitioner did not produce any records to show that his mitigation claim was not presented to the state court. Because he has the burden to show a substantial need for funding, the burden to show that his mitigation claim falls within the *Martinez* exception is also his. He has not met this burden with regard to his mitigation claim.[2]

As for Petitioner's possible claim that trial counsel failed to challenge the constitutionality

---

[2] If the mitigation claim was adjudicated on the merits in state court and not subject to the procedural bar addressed in *Martinez*, this Court would be required to afford deference to the state court findings on an adjudicated claim under 28 U.S.C. § 2254(d), and would not be allowed to consider evidence developed in federal court that was not before the state court in making the § 2254(d) determination. *See Pinholster,* 563 U.S. at 185. If the claim was not presented to the state court and is procedurally barred, Petitioner is not entitled to funding. *Riley,* 362 F.3d at 307.

of his execution on the basis of his mental illness, the CCA's opinion on direct appeal noted that Petitioner raised this challenge in point of error twenty-five and relied upon evidence and arguments presented at trial. *Green v. State,* 2012 WL 4673756, at *32. The CCA did not deny the challenge on the basis that any defect existed in the way it was presented, but instead because it had already rejected this claim in *Mays v. State,* 318. S.W.3d 368 (Tex. Crim. App. 2010). *Id.* at *33. The state's highest court has addressed and denied this challenge on its merits.

Petitioner has not shown that either of his claims was not presented to the state court and is subject to a procedural bar for purposes of the exception created in *Martinez*. His request for funding fails on this basis.

**B.     Ineffective Assistance**

Even if Petitioner had shown that his claims were not presented to the state court, he must also show that the claims are substantial and were not presented due to the ineffective assistance of state habeas counsel. As noted by Respondent, Petitioner has not even addressed the role of state habeas counsel needed to make this showing; he merely asserts that state habeas counsel was ineffective. (doc. 10 at 3.) He has therefore not shown that his claims fall within the exception to procedural bar created in *Martinez*, and his request for funding is also subject to denial on this basis.

**C.     No showing of potential merit**

Finally, to avoid the procedural bar created in *Martinez,* Petitioner must not only identify a claim that was not presented to the state court because of the ineffective assistance of state habeas counsel, but he must also show that the asserted claim has "some merit." *Martinez,* 132 S.Ct. at 1318.

Petitioner seeks expert assistance to determine whether the "evaluation conducted by the

5

defense mental health experts at trial" was "adequate under the standards required for forensic mental health evaluations" in connection with a possible claim that trial counsel was ineffective. (doc. 8 at 4.) A favorable expert opinion on these questions would not entitle him to habeas relief. A mere disagreement among experts would not establish ineffective assistance. "An expert's failure to diagnose a mental condition does not constitute ineffective assistance of *counsel,* and [a petitioner] has no constitutional guarantee of effective assistance of experts." *Earp v. Cullen,* 623 F.3d 1065, 1077 (9th Cir.2010) (emphasis in original). Counsel should normally be entitled to rely upon the opinions of her or his own mental health experts in deciding what defensive theories to pursue. *See, e.g., Hendricks v. Calderon,* 70 F.3d 1032, 1038 (9th Cir. 1995) ("In general, an attorney is entitled to rely on the opinions of mental health experts in deciding whether to pursue an insanity or diminished capacity defense."); *Turner v. Epps,* 412 F. App'x 696, 702 (5th Cir. 2011) ("Counsel should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses without worrying that a reviewing court will substitute its own judgment ... and rule that his performance was substandard for doing so,") (quoting *Smith v. Cockrell,* 311 F.3d 661, 676-77 (5th Cir. 2002), overruled in part on other grounds, *Tennard v. Dretke,* 542 U.S. 274 (2004)); *Wilson v. Sirmons,* 536 F.3d 1064, 1089 (10th Cir.2008) (noting that to a degree, counsel should be able to rely on an expert to determine what evidence is necessary to an effective evaluation, and what additional evidence the expert needs to complete testing).

Here, the CCA's opinion and the briefing in this federal case indicate that trial counsel conducted an extensive mitigation investigation and obtained the assistance of several mental health experts. The assistance of another expert in these proceedings to disagree with any or all of his prior experts would not establish ineffective assistance of counsel. The entirely new investigation for

6

which funding is requested appears to constitute the kind of fishing expedition that the funding statute was not intended to authorize. *See Bradford v. Johnson,* 162 F. Supp. 2d 578, 580 (N.D. Tex. 2001) (citing *Patrick v. Johnson,* 48 F.Supp.2d 645, 647 (N.D.Tex.1999), and *DeLong v. Thompson,* 790 F. Supp. 594, 616–17 (E.D.Va.1991); *Howell v. Fisher,* No. 3:15CV105-DMB, 2015 WL 5252659, at *1 (N.D. Miss. Sept. 8, 2015) (holding that "the Court cannot authorize funds for 'fishing expeditions,'" citing *Mamou v. Stephens,* No. 4:14cv403, 2014 WL 4274088, at *6 (S.D.Tex. Aug. 28, 2014)).    Petitioner has not shown that the funding he seeks would support a claim that likely has merit.[3]

In conclusion, Petitioner has not shown a substantial need for the requested assistance.

### III.  RECOMMENDATION

The motion for funding (doc. 8) should be **DENIED**.

**SO RECOMMENDED on this 23rd day of May, 2016.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[3] Respondent also asserts that *Martinez* does not create a new right to pre-petition funding or change the Fifth Circuit rule that a prisoner cannot show a substantial need for funds when his claim is procedurally barred from review. (doc. 10 at 4-7.) *Martinez* does not create a new right to funding and § 3599(f) would not otherwise appear to require it "when a petitioner has (a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when the sought after assistance would only support a meritless claim, or (c) when the sought after assistance would only supplement prior evidence." *Woodward,* 580 F.3d at 334; *see also Crutsinger v. Stephens,* 576 F. App'x 422, 431 (5th Cir. 2014) (holding that *Martinez* "does not mandate pre–petition funding, nor does it alter our rule that a prisoner cannot show a substantial need for funds when his claim is procedurally barred from review."). To the extent that Petitioner relies upon *Martinez* to create a separate right to funding independent of § 3599(f) that relieves him of the limitations of that funding statute, his request should be denied.

7

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*[Signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE