IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GARY GREEN, § | |
| § | |
| Petitioner, § | |
| § | |
| V. § | Civil Action No. 3:15-CV-02197-M-BH |
| § | |
| LORIE DAVIS, Director, § | (Death Penalty Case) |
| Texas Department of Criminal Justice § | |
| Correctional Institutions Division, § | |
| § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY POST-PETITION FUNDING**

By *Special Order 3-251*, this death penalty habeas case has been automatically referred for findings, conclusions, and recommendation. Before the Court is the *Postpetition Motion for Funding Based on Additional Evidence and Intervening Supreme Court and Fifth Circuit Caselaw*, filed on June 17, 2017 (doc. 42). Based on the relevant filings and applicable law, the motion should be denied.

**I. BACKGROUND**

This is the second motion for funding filed in this case. Petitioner Gary Green ("Green) previously sought funding in the amount of $27,000 for expert or investigative assistance by Dr. Gilda Kessner to conduct a new mitigation investigation in order to support a claim that trial counsel was ineffective in failing to investigate and present mitigating evidence at his trial. (Doc. 8 at 4-5, 21-22.) Green argued that funding was needed to develop this claim because it was not presented to the state court and now came within the exception to procedural bar created in *Martinez v. Ryan,* 566 U.S. 1 (2012), and *Trevino v. Thaler,* 569 U.S. 413 (2013). (Pre-Pet. Mot. at 19-21.) Respondent disputed both arguments. (Resp., doc. 10, at 2-7.)

Green initially did not show that the claim had not been presented in the state habeas proceedings, that the state habeas counsel was ineffective, or that the claim had any merit. Although he presented more records in connection with his objections to the recommended denial of his motion, funding was denied regardless of whether the claim had been exhausted because the proposed investigation could not establish a claim of ineffective assistance of counsel.

> As observed by the Magistrate Judge, favorable answers to the questions that Petitioner sought expert assistance to answer would not show that trial counsel was ineffective. "Petitioner seeks expert assistance to determine whether the 'evaluation conducted by the defense mental health experts at trial' was 'adequate under the standards required for forensic mental health evaluations' in connection with a possible claim that trial counsel was ineffective." (FCR at 5-6 (quoting doc. 8 at 4).) Favorable answers to these questions may potentially create a disagreement among experts, but would not show that counsel was ineffective. (FCR at 6-7 .)

(Order, doc. 22, at 5-6 (quoting FCR, doc. 14).) After the recommendation to deny funding was made, but before it was adopted, Green filed his petition for habeas relief. (Petition, doc. 17.)

## II. ANALYSIS

Approximately one year after his petition was filed and the limitations period for filing a claim for habeas relief ended, Green moved for funding in the amount of $39,380, including the same $27,000 previously requested for the mitigation investigation by Dr. Gilda Kessner as well as an additional $12,380 for an investigation by Dr. Ollie J. Seay to assess his adaptive behavior in connection with an intellectual disability claim. (Motion, doc. 42, at 28.) Respondent opposes the motion, arguing that it has the same defects as Green's prior funding motion and seeks funding to investigate claims that were adjudicated on the merits by the state court, and that an investigation would not show an entitlement to relief. (Resp., doc. 44, at 3-5.) She also argues that Green's claims are meritless. (Resp. at 5-10.) Green replies that the same claims are not the same ones presented to the state court, state habeas counsel did not obtain an expert assessment of whether he

showed adaptive deficits or met the diagnostic criteria for intellectual disability, and he should not be required to prove the merits of his claim, or show it is substantial, before he is provided the necessary funding to do so. (Reply, doc. 47, at 1-6.) Green also argues that a case pending before the Supreme Court will overturn the standard for funding applied in this Circuit. (Reply at 4-5.)

A. **State Court Proceedings**

In his postconviction application for writ of habeas corpus filed in the state court, Green made twenty claims, including several complaints against trial counsel for ineffective assistance. (State Habeas Record ("SHR") at 31-356.) In his first ground for relief, Green complained that trial counsel failed to conduct an adequate mitigation investigation. (SHR at 31-59.) Green also complained in his second, third and fourth grounds that trial counsel failed to adequately develop and present the lay and expert witness testimony at trial that would have supported his mitigation case. (SHR at 60-162.) In his fifth and sixth grounds, Green complained that trial counsel failed to present a full history of his life and failed to present the testimony of a competent social historian during the punishment phase of trial. (SHR at 163-212.) In his seventh ground, Green complained that trial counsel failed to adequately rebut the state's evidence in aggravation of punishment. (SHR at 213-21.) In his eighth ground, Green complained that trial counsel failed to present evidence that he would not be a future danger. (SHR at 222-31.) In his fourteenth ground, Green complained that trial counsel were ineffective for failing to present evidence of intellectual disability[1] and evidence of his low mental functioning to the jury as a mitigating factor during the punishment phase. (SHR at 288-306.)

---

[1] Green actually asserted that he was "mentally retarded," but that term has since been renamed intellectual disability. *See Hall v. Florida,* 134 S. Ct. 1986 (2014) (" Previous opinions of this Court have employed the term "mental retardation." This opinion uses the term "intellectual disability" to describe the identical phenomenon.)

3

The state court found that Green failed to prove his relevant allegations of ineffective assistance of trial counsel, that his claim of intellectual disability was procedurally barred, and in the alternative, lacked merit, and the state court denied habeas relief. (SHR at 611-55, 671-76); *Ex parte Green,* No. WR-81,575-01, 2015 WL 3899220 (Tex. Crim. App. June 24, 2015).

**B.     Standard for Funding**

Funding may be authorized for attorneys in death penalty cases to obtain investigative, expert, or other services upon a finding that such services are "reasonably necessary" for representation. *See* 18 U.S.C. § 3599(f). In the Fifth Circuit, the term "reasonably necessary" is construed to mean that a petitioner must demonstrate "a substantial need" for the requested assistance. *Riley v. Dretke,* 362 F.3d 302, 307 (5th Cir. 2004) (quoting *Clark v. Johnson,* 202 F.3d 760, 768 (5th Cir. 2000)) (internal quotation marks omitted). This test is under review by the Supreme Court in *Ayestas v. Davis*, No. 16-6795, 137 S. Ct. 1433 (2017).[2]

A district court cannot authorize funding in excess of $7,500, but when the additional showing is made under 18 U.S.C. § 3599(g)(2), it may recommend to the chief judge of the circuit or his designee that the excess funding is "necessary to provide fair compensation for services of an unusual character or duration." The denial of funding "has been upheld 'when a petitioner has (a) failed to supplement his funding request with a viable constitutional claim that is not procedurally barred, or (b) when the sought after assistance would only support a meritless claim, or (c) when the

---

[2] The Supreme Court granted cert. on the second question in the petition, which is:

2. Whether the Fifth Circuit erred in holding that 18 U.S.C. § 3599(f) withholds "reasonably necessary" resources to investigate and develop an IAC claim that state habeas counsel forfeited, where the claimant's existing evidence does not meet the ultimate burden of proof at the time the § 3599(f) motion is made.

Ayestas, No. 16-8795, petition at (i). Oral argument was held on October 30, 2017, and a decision is expected soon.

sought after assistance would only supplement prior evidence.' " *Woodward v. Epps,* 580 F.3d 318, 334 (5th Cir. 2009) (quoting *Smith v. Dretke,* 422 F.3d 269, 288 (5th Cir. 2005)). "A petitioner cannot show a substantial need [for funding under § 3599(f)] when his claim is procedurally barred from review." *Riley,* 362 F.3d at 307 (citing *Fuller v. Johnson,* 114 F.3d 491, 502 (5th Cir.1997)).

The claims that Green seeks to investigate appear to have been adjudicated on the merits by the state court. If so, new evidence that was not before the state court in making the determination under 2254(d) may not be considered. *See Cullen v. Pinholster,* 563 U.S. 170, 185 (2011) (holding that "evidence introduced in federal court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."). Funding to create such evidence that could not be considered would be an improper "misallocation of federal resources." *Devoe v. Davis,* No. 16-70026, 2018 WL 341755, at *10 (5th Cir. Jan. 9, 2018).

To avoid this obstacle, Green argues that these are not the same claims that were exhausted in the state court.[3] (Motion at 10, 21-22, 23; Reply at 1-2.) If so, then they are unexhausted and would now be subject to procedural bar if presented to the state court under its abuse-of-the-writ doctrine codified in TEX. CODE CRIM. PROC. art. 11.071, § 5(a).[4] *See Neville v. Dretke,* 423 F.3d

---

[3] In support of his allegation that he did not exhaust his intellectual disability claim, Green has produced an affidavit from state habeas counsel that he made a strategic decision regarding the use of limited resources to not obtain a full evaluation of Green's intellectual disability. This, however, does not show that Green did not make a claim that he was intellectually disabled before the state court, or that the state court did not deny that claim on its merits. It merely asserts that state habeas counsel did not obtain enough evidence to support the claim presented based on counsel's decision regarding the apportionment of limited resources. Green has not shown that his intellectual disability claim was not presented to the state court.

[4] Texas law provides:

If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that:

5

474, 480 (5th Cir. 2005) (finding unexhausted claim procedurally barred). Green has not attempted to show how his claims could come within an exception to bar under the Texas law; funding for procedurally barred claims is not required. *See Riley*, 362 F.3d at 307.

As in his pre-petition motion, Green argues that funding is necessary to bring his claims of ineffective assistance of trial counsel within the exception to procedural bar created in *Martinez*. (Motion at 21-22, 26; Reply at 6.) He seeks to prove the ineffective assistance claim by attacking the methods and opinions of the expert. As more fully set out in the prior recommendation and the order adopting that recommendation, merely establishing a disagreement between experts does not show ineffective assistance of counsel. (FCR at 5-7; Order at 5-7.) This law has not changed since those decisions. "*Martinez* ... does not mandate pre-petition funding, nor does it alter our rule that a prisoner cannot show a substantial need for funds when his claim is procedurally barred from review." *Crutsinger v. Stephens,* 576 F. App'x 422, 431 (5th Cir. 2014); *see also Allen v. Stephens*, 805 F.3d 617, 638 (5th Cir. 2015) (affirming denial of funding when habeas petition had not shown that he could use the funding to develop a viable claim and rejecting argument that *Martinez* and

---

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

Tex. Crim. Proc. Code Ann. art. 11.071, § 5(a).

*Trevino* require the granting of funds to develop such claims).

In addition, Green's argument that state habeas counsel provided ineffective assistance by not developing evidence of his adaptive deficits to support his intellectual disability claim are effectively disproven by the very affidavit he submits in support. It explains that the decision was a litigation strategy regarding the apportionment of limited resources that appears reasonable:

> Ultimately, our team on Mr. Green's case decided not to retain further expert assistance in regard to an intellectual disability claim based on a weighing of the likelihood of developing further beneficial evidence versus the benefit of using time and resources elsewhere on Mr. Green's case.

(Romig Aff. at App. 828.) This strategy appears particularly sound in light of Green's IQ scores that place him above the standard error of measurement for intellectual disability.

Green argues that *Moore v. Texas,* 137 S. Ct. 1039 (2017), supports his post-petition motion because "[t]he major issue in both *Moore* and in Petitioner's case is that the TCCA treats the WAIS-IV scaled-score of 70 as a 'hard-number' to determine whether a person is intellectually disabled for Eighth Amendment purposes." (Motion at 12.) The real issue in *Moore* was the application of the test for adaptive deficits, however, because Moore's IQ score came within the Standard Error of Measurement (SEM) for mental retardation.

The Supreme Court has explained that the SEM is a method to correct potential error in IQ testing:

> There are various ways to account for error in IQ testing. One way is Florida's approach (evaluate multiple test results). Another is to use a mathematical measurement called the "standard error of measurement" or SEM. *See* AAMR 10th ed. 67-71 (App. 4.1). Of critical importance, there is not a single, uniform SEM across IQ tests or even across test-takers. Rather, "the [SEM] varies by test, subgroup, and age group." User's Guide To Accompany AAIDD 11th ed.: Definition, Classification, and Systems of Supports 22 (2012).

*Hall v. Florida,* 134 S. Ct. 1986, 2009 (2014). *Hall* actually did focus on the SEM as applied by

7

Florida courts, but Green's lowest IQ score of 78 is still too high.

Green appears to argue that the SEM should be applied **twice** for a total reduction of 10 points rather than 5, but that has no legal basis. (Mot. Funding at 12-13.) In applying *Hall,* the Supreme Court in *Moore* applied the SEM only once.

> Moore's score of **74**, adjusted for the standard error of measurement, yields a range of **69 to 79**, see 470 S.W.3d, at 519, as the State's retained expert acknowledged, see Brief for Petitioner 39, n. 18; App. 185, 189-190. **Because the lower end of Moore's score range falls at or below 70**, the CCA had to move on to consider Moore's adaptive functioning. See *Hall,* 572 U.S., at —— – ——, 134 S.Ct., at 2001; 470 S.W.3d, at 536 (Alcala, J., dissenting) (even if the majority correctly limited the scores it would consider, "current medical standards ... would still require [the CCA] to examine whether [Moore] has adaptive deficits").

*Moore,* 137 S. Ct. at 1049 (emphasis added). The Court did not end its inquiry into adaptive deficits because of the IQ score above 70, but concluded that, "in line with *Hall,* we require that courts continue the inquiry and consider other evidence of intellectual disability **where an individual's IQ score, adjusted for the test's standard error, falls within the clinically established range for intellectual-functioning deficits**." *Id.* 137 S. Ct. at 1050 (emphasis added). Therefore, *Moore* did not expand *Hall* to go outside of the standard error of measurement (SEM), as Green appears to argue. That was not required because Moore's IQ score was already within the range for mental retardation when considering the SEM. Green's is not.

Green has not shown how the intervening opinion in *Moore* would apply to his case. The significance of *Moore* is that it held that the Texas method for measuring adaptive deficits set out in *Ex parte Briseno,* 135 S.W.3d 1 (2004), violated the Constitution. The issue of adaptive deficits never came up in Green's trial, however, because none of Green's experts considered him to have an IQ within the range of intellectual disability. Therefore, the application of the *Briseno* test was never an issue in Green's case and it's invalidation does not impact the state court's adjudication

8

of Green's claims.

In sum, Green has not shown that the funding he seeks would support a viable constitutional claim that is not procedurally barred and that is not meritless. He has therefore not shown a reasonable need for the requested assistance.

### III. RECOMMENDATION

The motion for funding (doc. 42) should be **DENIED**.

**SO RECOMMENDED on this 28th day of February, 2018.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE