IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY GREEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | Civil Action No. 3:15-CV-02197-M |
| | § | |
| LORIE DAVIS, Director, | § | (Death Penalty Case) |
| Texas Department of Criminal Justice | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**ORDER OVERRULING OBJECTIONS AND ACCEPTING FINDINGS,
CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The United States Magistrate Judge made Findings, Conclusions, and a Recommendation ("FCR") in this case to deny Petitioner's opposed post-petition motion for funding (doc. 42). Objections were filed by appointed counsel for Petitioner. The District Court reviewed *de novo* those portions of the FCR to which objection was made, and reviewed the remaining portions for plain error. Finding no error, the Court **OVERRULES** the objections, and **ACCEPTS** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge.

**I. MOTION**

This is Green's second motion for funding. As in the first motion, Green states that trial counsel did not hire a qualified mitigation investigator and that the mitigation investigation was inadequate. (Mot. at 6-9.) Green again seeks $27,000 to hire Dr. Gilda Kessner to answer the same questions regarding whether the "evaluation conducted by the defense mental health experts at trial" was "adequate under the standards required for forensic mental health evaluations" in connection

with a possible claim that trial counsel was ineffective. (Mot. at 27-28 (repeating language in prior motion quoted in this Court's prior order, doc. 22).) Green also seeks an additional $12,380 to hire Dr. Ollie J. Seay to evaluate Green for intellectual disability specifically as it pertains to his adaptive deficits. (Mot. at 23-24, 28.)

The Magistrate Judge found that Green had not shown that the funding he seeks would support a viable constitutional claim that is not procedurally barred and that is not meritless. She found that the request for funding to hire Dr. Kessner presents the same defect set out in Green's original funding motion, that the sought investigative assistance would only create a potential disagreement between experts rather than showing prior counsel ineffective. The Magistrate Judge also found that the exception to procedural bar created in *Martinez v. Ryan*, 566 U.S. 1 (2012), did not warrant funding. (FCR at 6.) The Magistrate Judge also found that the record belies the allegation that prior counsel were ineffective in failing to investigate Green's intellectual disability. (FCR at 7.) Regarding the request for funding to investigate intellectual disability, the Magistrate Judge also found that the submitted IQ score was above the range for intellectual disability. (FCR at 8.)

## II. ANALYSIS

### A. <u>Standard</u>

Since the FCR was issued, the Supreme Court has overturned the circuit standard. "What the statutory phrase calls for, we conclude, is a determination by the district court, in the exercise of its discretion, as to whether a reasonable attorney would regard the services as sufficiently important, guided by the considerations we set out more fully below." *Ayestas v. Davis,* No. 16-6795, 2018 WL 1402425, at *10 (Mar. 21, 2018). When seeking such funds to bring claims under *Martinez* and "[i]n

2

those cases in which funding stands a credible chance of enabling a habeas petitioner to overcome the obstacle of procedural default, it may be error for a district court to refuse funding." *Id.,* 2018 WL 1402425, at *11. Even so, "Congress changed the verb from "shall" to "may," and thus made it perfectly clear that determining whether funding is "reasonably necessary" is a decision as to which district courts enjoy broad discretion." *Id.,* 2018 WL 1402425, at *11 (citing *Kingdomware Technologies, Inc. v. United States,* 136 S. Ct. 1969, 1977 (2016)). This involves practical considerations regarding the likelihood that funding will enable an applicant to prove his or her claim.

> A natural consideration informing the exercise of that discretion is the likelihood that the contemplated services will help the applicant win relief. After all, the proposed services must be "reasonably necessary" for the applicant's representation, and it would not be reasonable—in fact, it would be quite unreasonable—to think that services are necessary to the applicant's representation if, realistically speaking, they stand little hope of helping him win relief. Proper application of the "reasonably necessary" standard thus requires courts to consider the potential merit of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way.
>
> To be clear, a funding applicant must not be expected to prove that he will be able to win relief if given the services he seeks. But the "reasonably necessary" test requires an assessment of the likely utility of the services requested, and § 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone.

*Id.,* 2018 WL 1402425, at *11. But this is not an entirely new inquiry.

> These interpretive principles are consistent with the way in which § 3599's predecessors were read by the lower courts. *See, e.g., Alden, supra,* at 318–319 (explaining that it was "appropriate for the district court to satisfy itself that [the] defendant may have a plausible defense before granting the defendant's ... motion for psychiatric assistance to aid in that defense," and that it is not proper to use the funding statute to subsidize a " 'fishing expedition' "); *United States v. Hamlet,* 480 F.2d 556, 557 (C.A.5 1973) (per curiam) (upholding District Court's refusal to fund psychiatric services based on the District Court's conclusion that "the request for

psychiatric services was ... lacking in merit" because there was "no serious possibility that appellant was legally insane at any time pertinent to the crimes committed"). This abundance of precedent shows courts have plenty of experience making the determinations that § 3599(f) contemplates.

*Id.,* 2018 WL 1402425, at *12.

## B. Ineffective Assistance of Counsel

Green's motion seeks authorization for Dr. Gilda Kessner to provide expert assistance to answer questions regarding the evaluations conducted by the defense mental health experts at trial under the standards required for forensic mental health evaluations, whether they were "adequate" and, if not, whether a "professionally adequate evaluation" could now be conducted and what it would show. (Mot. at 27.) Green plans to use such an evaluation in "raising a substantial IATC claim under *Wiggins*." (Mot. at 27.) This Court has previously found that favorable answers to these exact same questions "may potentially create a disagreement among experts, but would not show that counsel was ineffective." (Order, doc. 22, at 5-6.)

> "An expert's failure to diagnose a mental condition does not constitute ineffective assistance of ***counsel***, and [a petitioner] has no constitutional guarantee of effective assistance of experts." *Earp v. Cullen,* 623 F.3d 1065, 1077 (9th Cir.2010) (emphasis in original). Counsel should normally be entitled to rely upon the opinions of her or his own mental health experts in deciding what defensive theories to pursue. *See, e.g., Hendricks v. Calderon,* 70 F.3d 1032, 1038 (9th Cir. 1995) ("In general, an attorney is entitled to rely on the opinions of mental health experts in deciding whether to pursue an insanity or diminished capacity defense."); *Turner v. Epps,* 412 F. App'x 696, 702 (5th Cir. 2011) ("Counsel should be permitted to rely upon the objectively reasonable evaluations and opinions of expert witnesses without worrying that a reviewing court will substitute its own judgment ... and rule that his performance was substandard for doing so,") (quoting *Smith v. Cockrell,* 311 F.3d 661, 676-77 (5th Cir. 2002), overruled in part on other grounds, *Tennard v. Dretke,* 542 U.S. 274 (2004)); *Wilson v. Sirmons,* 536 F.3d 1064, 1089 (10th Cir.2008) (noting that to a degree, counsel should be able to rely on an expert to determine what evidence is necessary to an effective evaluation, and what additional evidence the expert needs to complete testing).

4

(FCR, doc. 14, at 6 (adopted by Order, doc. 22, July 12, 2016.) This Court also found additional authority in support of the same conclusion.

> The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness. To entertain such claims would immerse federal judges in an endless battle of the experts to determine whether a particular psychiatric examination was appropriate. *See Harris v. Vasquez*, 949 F.2d 1497, 1518 (9th Cir.l990); *Silagy v. Peters*, 905 F.2d 986, 1013 (7th Cir.1990). Furthermore, it would undermine the finality of state criminal convictions, which would constantly be subject to psychiatric reappraisal years after the trial had ended. *Harris,* 949 F.2d at 1517-18; *Silagy,* 905 F.2d at 1013.

(Order, doc. 22, at 6 (citing *Wilson v. Greene,* 155 F.3d 396, 401 (4th Cir. 1998)).)

Applying *Ayestas,* it is clear that the requested assistance of Dr. Kessner is not designed to produce evidence that will support a claim of ineffective assistance of counsel. Considering the potential merit of the ineffective-assistance claim that Green wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that Green will be able to clear any procedural hurdles standing in the way, the Magistrate Judge's recommendation to deny funding for this expert remains sound. "[I]t would not be reasonable—in fact, it would be quite unreasonable—to think that services are necessary to the applicant's representation if, realistically speaking, they stand little hope of helping him win relief." *Ayestas,* 2018 WL 1402425, at *11. Therefore, the request for funding for Dr. Kessner is denied.

### C. <u>Intellectual Disability</u>

Green's motion seeking funding for Dr. Seay also fails under the new standard. Green argues that the Supreme Court's opinion in *Moore v. Texas,* 137 S. Ct. 1039 (2017), which struck down the Texas standard for determining adaptive deficits, supports his intellectual disability claim. But the issue before the state court was not Green's adaptive deficits, but Green's failure to show an IQ score

5

within the range of intellectual disability. Green bases his argument on a misreading of the Standard Error of Measurement (SEM) for IQ scores. The Magistrate Judge properly distinguished this case from *Moore* in holding that Green's lowest IQ score of 78 is too high for a finding of intellectual disability. (FCR, doc. 52, at 7-8.) Green's submitted IQ score is too high to qualify for intellectual disability. Therefore, the state court never reached the issue of Green's adaptive deficits, nor should this Court.

Because the requested funding for Dr. Seay is not shown to be capable of supporting any potential relief in this case, that request is also denied.

### D. <u>Objections</u>

Green has made several objections to the FCR. These objections have largely been rendered moot by the application of the intervening standard in *Ayestas*. Even so, each of the objections is considered and overruled.

In his first objection, Green complains that the FCR found that the claims that Green seeks to investigate appear to have been adjudicated on the merits by the state court and barred by *Cullen v. Pinholster,* 563 U.S. 170, 185 (2011). (Obj. at 6-17.) In support, Green argues (1) that the "abandonment rage" issue has never been litigated and (2) that state habeas counsel decided to not investigate the intellectual disability claim. Although the FCR correctly references the fact that an intellectual disability claim and a *Wiggins* claim were presented and Green's mental health has been thoroughly investigated and litigated, it is unnecessary to determine whether the same claims were litigated because, as set out above, Green has not met the *Ayestas* standard with respect to any unexhausted claim.

In his second objection, Green complains that the FCR improperly found that the affidavit of state habeas counsel reflects a reasonable strategy regarding the apportionment of limited resources and that the lowest IQ score is still too high for a finding of intellectual disability. These complaints are simply incorrect. Every appointed counsel is entitled and, in fact, required to make reasonable strategic decisions regarding the use of limited resources. *See Preyor v. Stephens,* 537 F. App'x 412, 422 (5th Cir. 2013) ("Preyor's trial counsel, as well as his state habeas counsel, were 'entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.'" (quoting *Harrington v. Richter,* 562 U.S. 86, 107, (2011)); *Beatty v. Stephens,* 759 F.3d 455, 463 (5th Cir. 2014). Green complains that the Office of Capital and Forensic Writs limited its investigative and expert assistance to the budget granted by the state legislature rather than attempting to supplement that with requests to the state courts. (Obj. at 13-14.) This was one of the "numerous" factors considered by the OCW, including the preservation of this issue for new development in the federal courts. (Romig Aff. at App.828.) Green has produced no authority that state habeas counsel was not entitled to rely upon the state legislative apportionment and this Court is aware of none. But even if he had, it would be entirely reasonable to not pursue additional funding for intellectual disability from any source when the inmate's IQ score is 78, at least 3 points above the maximum score of 70 considering the SEM of 5 points.

In his third objection, Green complains about the analysis in the FCR regarding his request for funding to bring his claims of ineffective assistance of counsel within the exception to procedural bar created in *Martinez v. Ryan,* 566 U.S. 1 (2012), and applied to Texas cases in *Trevino v. Thaler*, 133 S.Ct. 1911 (2013). This Court's *de novo* analysis of this request under the new *Ayestas* standard

has rendered this objection moot.

In his fourth objection, Green complains that the FCR did not address his *Wiggins* claim. The FCR addressed the issues expressly presented in the post-petition motion, which requests funding for Dr. Kessner to answer questions pertaining to the quality of the prior expert evaluations. The motion expressly bases its attempt to prove a *Wiggins* claim on the answers to those questions. (Mot. at 28.) In his objections, however, Green makes a slightly different request that suggests a right to funding to investigate a *Wiggins* claim outside of the listed questions. This discrete funding issue was not fairly presented to the Magistrate Judge who properly determined that the sought funding was incapable of showing ineffective assistance of counsel under *Wiggins*. Therefore, this objection is overruled without prejudice to Green's ability to make an independent request for *Wiggins* funding that is not limited to the adequacy of the prior expert evaluations.

In his fifth objection, Green asserts that it was wrong for the FCR to deny funding in an exhausted claim under *Pinholster* because the relitigation bar of 28 U.S.C. § 2254(d) is a form of issue preclusion that does not apply to a state court decision when the parties did not have a full and fair opportunity to litigate in the state court. (Obj. at 26 (citing *Montana v. United States,* 440 U.S. 147, 153 (1979).) This is incorrect.

The doctrine of "issue preclusion" is a "precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata." *See Montana,* 440 U.S. at 153. Any argument that it was applied to habeas proceedings under *Townsend v. Sain,* 372 U.S. 293, 312 (1963), and incorporated into the prior version of 28 U.S.C. § 2254(d) would be superseded by the amendments under the AEDPA that "jettisoned all references to a 'full and fair hearing' from the presumption of correctness accorded state court findings." *Valdez v. Cockrell,* 274 F.3d 941, 949

(5th Cir. 2001); *Battaglia v. Davis,* No. 3:16-CV-1687-B, slip op. at 14 (N.D. Tex., Jan. 24, 2018) (Boyle, J.), *aff'd,* No. 18-70002 (5th Cir. Feb. 1, 2018). The Court declines to adopt such a novel theory that would appear to contradict *Valdez*. *See Battaglia v. Davis,* No. 18-70002, Slip. op. at 7 ("Battaglia cites no authority holding that § 2254(d) is a form of issue preclusion that violates due process, and like the district court, we are not aware of any such case.").

### III. CONCLUSION

The Court finds that a reasonable attorney would not regard the requested services as sufficiently important to the representation to warrant funding. Green has not shown that the sought services could develop potential merit of the claims that Green wants to pursue. Green has also not shown the likelihood that the services will generate useful and admissible evidence. And with respect to the procedurally defaulted claims, Green has not shown a reasonable prospect that the requested services will be able to clear the obvious procedural hurdles standing in the way.

Therefore, Green's opposed post-petition motion for funding (doc. 42) is **DENIED**.

**SO ORDERED** this 27th day of March, 2018.

*[signature: Barbara M. G. Lynn]*
**BARBARA M. G. LYNN**
**CHIEF JUDGE**