UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| *Gary Green*, <br><br> **Petitioner,** <br><br> v. <br><br> *Lorie Davis*, **Director, Texas Department of Criminal Justice, Correctional Institutions Division,** <br><br> **Respondent** | **No. 3-15-CV-02197-M-BH** <br><br> **Death Penalty Case** |

**PETITIONER'S OPPOSED MOTION FOR RECONSIDERATION
OF THE ORDER OVERRULING OBJECTIONS AND ACCEPTING
FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE (ECF-56)**

**Michael Mowla**
P.O. Box 868
Cedar Hill, TX 75106
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
**Attorney for Petitioner**
**(Lead counsel of record)**

**Lydia M.V. Brandt**
The Brandt Law Firm, P.C.
P.O. Box 326
Farmersville, TX  75442
Phone: 972-752-5805
lydiabrandt566@gmail.com
Texas Bar No. 00795262
**Attorney for Petitioner**

## I. Table of Contents

| | | |
|---|---|---|
| I. | Table of Contents | 2 |
| II. | Background | 3 |
| III. | Motion for Reconsideration | 4 |
| | 1. Reasons for this motion | 4 |
| | 2. *Ayestas* and its applicability to Petitioner's case | 5 |
| IV. | Conclusion and Prayer | 10 |
| V. | Certificate of Conference | 12 |
| VI. | Certificate of Service | 12 |

To the Honorable United States District Judge Barbara Lynn:

1. Undersigned counsel files this opposed motion for reconsideration of the *ORDER OVERRULING OBJECTIONS AND ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE* (ECF-56) ("Order")

**II. Background**

2. On April 11, 2016, Petitioner filed a prepetition *Opposed First Motion for Funding* (ECF-8).

3. The government filed a response (ECF-10), and Petitioner filed a reply (ECF-11).

4. On May 23, 2016, the Magistrate Judge entered findings that recommended against relief. (ECF-14). Petitioner file objections to the recommendations. (ECF-16).

5. On June 13, 2016, Petitioner filed the petition under 28 U.S.C. § 2254 (ECF-17).

6. On July 12, 2016, the District Judge overruled Petitioner's objections. (ECF-22).

7. On March 13, 2017, the government filed its answer to the petition under 28 U.S.C. § 2254. (ECF-36).

8. On June 18, 2017, Petitioner filed the *POSTPETITION MOTION FOR FUNDING BASED ON ADDITIONAL EVIDENCE AND INTERVENING SUPREME COURT AND FIFTH CIRCUIT CASELAW* ("postpetition funding motion"). (ECF-42).

9. On June 19, 2017, Petitioner filed the reply to the Government's answer to the petition under 28 U.S.C. § 2254. (ECF-43).

10. On July 7, 2017, the Government filed the response to the postpetition funding motion. (ECF-44).

11. On February 28, 2018, the Magistrate Judge entered the Findings recommending that the postpetition funding motion be denied. (ECF-52).

12. On the early morning of March 21, 2018 (2:26 a.m.), Petitioner filed the Objections to the Findings. (ECF-55).

13. A significant part of the arguments in the Objections were based on the possible ruling in *Ayestas v. Davis*.

14. Later in the day on March 21, 2018, the Supreme Court handed down Ayestas. *Ayestas v. Davis*, No. 16-6795, 2018 U.S. LEXIS 1913 (U.S. March 21, 2018).

15. After reviewing *Ayestas*, undersigned counsel determined that supplemental objections would be necessary.

16. The Government did **not** object to the filing of the supplemental objections provided that undersigned counsel made clear to the Court that the Government intended to respond to both the Objections and supplemental objections after the supplemental document is filed. Undersigned counsel agreed to this.

17. Just as undersigned counsel was completing the supplemental objections, on Tuesday, March 27, 2018, the District Judge entered the Order.

18. Citations to the Appendix ("App.") refer to the Appendix submitted with the postpetition funding motion, ECF-42-1).

### III.   Motion for Reconsideration

#### 1.   Reasons for this motion

19. By filing the timely, specific Objections (ECF-55), Petitioner preserved the issues of the funding motion for appellate review. *See* 28 U.S.C. § 636(b)(1) (2018) and *Douglass v. United Servs. Automobile Assn.*, 79 F.3d 1415, 1417 (5th Cir. 1996).

20. However, on page 6 of the Order, the Court wrote, "[G]reen has made several objections to the FCR. **These objections have largely been rendered moot by the application**

4

**of the intervening standard in** *Ayestas*. Even so, each of the objections is considered and overruled." (emphasis supplied). (ECF-56 p. 6).

21.     This language is concerning because undersigned counsel does **not** want the Fifth Circuit to conclude that because this Court found that the objections have "largely been rendered moot" by *Ayestas* that the issues are not preserved for appellate review.

22.     In addition, undersigned counsel believes that it is necessary both for this Court's consideration and for appellate review that his arguments regarding *Ayestas* are presented here.

### 2.  *Ayestas* and its applicability to Petitioner's case

23.     Petitioner **incorporates** the arguments in the Objections (ECF-55) into this pleading that did not directly pertain to *Ayestas*. Undersigned counsel wrote 24 pages of objections and does **not** believe that the objections must be repeated here. Rather, undersigned counsel will focus on the applicability of *Ayestas* to Petitioner's case and why counsel believes the Court erred in overruling the Objections.

24.     In *Ayestas*, the petitioner was convicted of capital murder in Texas. He and two accomplices invaded a home and murdered a person. *Ayestas*, *id*. at *6.

25.     As 404(b)-evidence during punishment, the State presented evidence that a few days after the murder, the petitioner pulled out a machinegun and forced another person into a room where two of the petitioner's friends were holding the other person friend at knifepoint. *Ayestas*, *id*. at *7-8. The person begged for his life while the petitioner and his friends haggled about who would kill them. *Ayestas*, *id*. at *8. The petitioner relented but threatened to kill the person and his family if he contacted the police. The petitioner then stole the victim's truck. *Id*.

26. Trial counsel presented very little mitigation evidence due in part to the petitioner's refusal for months to allow him to contact his family in Honduras who might have testified about his character and upbringing. *Id*.

27. On the eve of trial, the petitioner gave in, and his lawyers attempted to contact his family but were unsuccessful in getting any of them to testify. *Id*.

28. The jury sentenced the petitioner to death, finding unanimously that under Tex. Code Crim. Proc. Art. 37.071, §§ 2(b), (d)(2), (e) & (g): (1) he poses a continuing threat to society; (2) he personally caused the death of the victim, intended to kill her, or anticipated that she would be killed; and (3) there were not sufficient mitigating circumstances to warrant a sentence of life without parole instead of death. *Ayestas*, *id*. at *9.

29. In the habeas petition under 28 U.S.C. § 2254, the petitioner's alleged ineffective assistance of trial counsel ("IATC") for failure to conduct an adequate search for mitigation evidence concerning mental illness and history of drug and alcohol abuse. *Ayestas*, *id*. at *10.

30. This claim was not raised by state habeas counsel, so the district court held that the claim was barred by procedural default. *Ayestas*, *id*. at *11.

31. The Supreme Court reversed for reconsideration under *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), which held that a state prisoner seeking federal habeas relief could overcome the procedural default of an IATC claim by showing that the claim is substantial and that state habeas counsel was also ineffective in failing to raise the claim in a state habeas proceeding. *Ayestas*, *id*. at *11.

32. To help develop these claims, the petitioner filed an ex parte motion asking the district court for $20,016 in funding to conduct a search for evidence supporting his petition, relying on 18 U.S.C. § 3599(f). *Ayestas*, *id*. at *11-12.

33. The District Court refused the funding request, and the Fifth Circuit affirmed the decision. *Ayestas*, *id*. at *12-14.

34. The petitioner sought review in the SCOTUS.

35. The SCOTUS reversed the Fifth Circuit, finding that to satisfy 28 U.S.C. § 3599(f), a petitioner need only show that "a reasonable attorney would regard the services as sufficiently important." *Ayestas*, *id*. at *24.

36. The Court held that under 18 U.S.C. § 3599(f), "Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor." *Ayestas*, *id*. at *12 and 24-25, *citing* Section 3599(f).

37. The Fifth Circuit had held that individuals seeking funding for such services must show that they have a "substantial need" for the services, and this is error because it is arguably more demanding. In fact, the Fifth Circuit exacerbated the problem by invoking precedent to the effect that a habeas petitioner seeking funding must present "a viable constitutional claim that is not procedurally barred." *Ayestas*, *id*. at *25.

38. Although the Fifth Circuit adopted its rule before *Trevino*, after *Trevino* the rule was too restrictive because *Trevino* permits a Texas prisoner to overcome the failure to raise a substantial ineffective-assistance claim in state court by showing that state habeas counsel was ineffective. *Ayestas*, *id*. at *25-26. It is possible that investigation might enable a petitioner to carry the burden. In cases where which funding stands a credible chance of enabling a habeas petitioner to overcome the obstacle of procedural default, it may be error for a district court to refuse funding. *Id.*

7

39. Granted, determining whether funding is "reasonably necessary" is a decision as to which district courts enjoy broad discretion. *Ayestas*, *id*. at *26.

40. However, a death-penalty funding-applicant must **not** be expected to prove that he will be able to win relief if given the services he seeks. *Ayestas*, *id*. at *27.

41. The "reasonably necessary" test requires an assessment of the likely utility of the services requested, and 28 U.S.C. § 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone. *Ayestas*, *id*. at *27.

42. Thus, *Ayestas* **overruled** Fifth Circuit precedent.

43. The SCOTUS quoted the Fifth Circuit's rule in *Crutsinger* "that a prisoner cannot show a substantial need for funds when his claim is procedurally barred from review," again holding that after *Trevino*, the Fifth Circuit rule is a "rule [that] is too restrictive.

44. "A judicial decision is said to be overruled when a later decision, rendered by the same court or by a superior court in the same system, expresses a judgment upon the same question or law directly opposite to that which was before given, thereby depriving the earlier opinion of all authority as a precedent."  *The Law Dictionary Featuring Black's Law Dictionary Free Online Legal Dictionary*, 2nd Ed. https://thelawdictionary.org/overrule/ (last accessed on April 2, 2018).

45. *Ayestas* held that the statutory phrase reasonably necessary calls for a determination of "whether a reasonable attorney [and not the court] would regard the services as sufficiently important...." *Ayestas*, *id*. at *10.

46. *Ayestas* recognized that "reasonably necessary" does **not** mean that the services are "essential."

47. Nor does "reasonably necessary" mean that the services must be "absolutely necessary."

8

48. Instead, "reasonably necessary" means "convenient, useful, appropriate, suitable, proper, or conducive to the end sought." *Ayestas*, *id*. at *23-24, *citing* Black's Law Dictionary 928 (5th ed. 1979).

49. Further, the SCOTUS has consistently relied on prevailing professional norms (e.g. ABA capital guidelines) as "guides to determining what is reasonable" when a Petitioner presents a "Factually Developed Claim" in his federal habeas petition.

50. A "Factually Developed Claim" is one in which the prongs of deficient performance and prejudice in the habeas petition is supported by extra-record evidence – the work product of investigators and experts, adequately funded and given the necessary time to perform the tasks for which they were hired. *See Wiggins v. Smith*, 539 U.S. 510, 523 (2003) and *Williams v. Taylor*, 529 U.S. 362, 396 (2000) ("Counsel's conduct similarly fell short of the standards for capital defense work articulated by the American Bar Association (ABA)-standards to which we long have referred as "guides to determining what is reasonable.").

51. Further, in determining if a petitioner carried his burden of proving a substantial factually developed claim, the guidelines against which former counsel's conduct is measured are those prevailing at the time the representation took place.

52. Restatements of professional standards, such as the ABA and Texas Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases "…can be useful as "guides" to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place." *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009).

53. Likewise, the prevailing norms of practice should be used in determining if "a reasonable attorney would regard the § 3599 services as sufficiently important." *Ayestas*, *id*. at *24, 30.

9

54. A funding applicant simply cannot be expected to prove that he will be able to win relief if given the services he seeks. *Ayestas*, *id*. at *33.

55. There is no better way to state this: without funding it is impossible for a petitioner to do so. All a funding applicant need show is the likelihood of deficient performance measured against prevailing professional norms, from which arises the "plausibility" of an "early-stage claim."

56. Thus, undersigned counsel argues that the Order effectively demands that Petitioner must prove that his claims are substantial before this Court will provide funding to prove a substantial claim. This is impossible to do.

57. The Order also effectively states that this Court will not fund a procedurally defaulted claim, which is contrary to *Ayestas* and *Trevino*. The SCOTUS has in no uncertain terms rejected such a position.

## IV.  Conclusion and Prayer

For the reasons stated above and the Objections (ECF-55), undersigned counsel requests that the Court grant this opposed motion for reconsideration of the *ORDER OVERRULING OBJECTIONS AND ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE* (ECF-56), overrule the Findings (ECF-52), and grant the relief requested in the postpetition funding motion, which is to grant funding to Petitioner so that undersigned counsel may:

- Retain Dr. Kessner to answer the following questions:

  - **Question 1:** Given the pretrial investigation conducted by Dr. Kelly Goodness and trial counsel, and based on the information provided by federal habeas counsel, was the evaluation conducted by the defense mental health experts at trial adequate under the standards required for forensic mental health evaluations?

- **Question 2:** If the evaluations by the defense mental health experts at trial, including the recommendations by Dr. Kelly Goodness, were professionally not adequate, can a professionally adequate evaluation now be conducted, and what would such an evaluation entail, including answers to the following:

  - **2A:** Whether, at the time of the offense, Petitioner had a severe mental illness or severe psychological or cognitive impairments (or both)? If so, what were those illnesses or impairments?

  - **2B:** If Petitioner has a severe mental illness or psychological impairments, were they such that they rendered him unable to form the requisite intent to commit capital murder?

- Use the funding to further the inquiring based on the answers to the two questions above and raise a substantial IATC claim under *Wiggins* because of the failure to identify, investigate, develop and present mental health themes in innocence-guilt **and** the punishment phases of trial (*e.g.*, abandonment-rage), and to show that state habeas counsel was ineffective in failing to do so as well, to establish cause to overcome procedural default under *Martinez*, 132 S.Ct. 1309 (2012), and *Trevino*, 133 S.Ct. 1911 (2013).

- Allow undersigned counsel to utilize Dr. Kessner to help counsel investigate another potential IATC claim for failure to challenge the constitutionality in executing Petitioner, who was mentally ill at the time of the offense (neither IATC claim was raised at trial or in state habeas)

- Fund the investigation through Dr. Kessner, who provided an estimate of 110 hours for performing the following tasks: (1) obtaining and reviewing records (40 hours); (2) interview of third parties (10 hours); (3) reviewing documents (10 hours); (4) interview and examination of Petitioner (15 hours); (5) consultations with attorneys for Petitioner (10 hours); (6) consultation with other experts (5 hours); (7) time for drafting reports (5 hours); and (8) travel (15 hours). (App.008). Dr. Kessner's fee is $225 per hour. (App.008). The requested amount for Dr. Kessner's time is **$24,750**.

- Fund the investigation by paying $2,250 for Dr. Kessner's expenses (App.008-009), bringing the total funding request for Dr. Kessner is **$27,000**.

- Retain Dr. Seay for **$12,380**, which is broken down as: out-of-town rate (two trips to Dallas; 1 trip to Livingston) ($2,500 X 3) = $7,500; hours to review records, telephone conferences, report writing ($250 X 12) = $3,000, and travel Hours (2 round-trips Austin to Dallas; 1 round trip Austin to Livingston) (16 + 7.5 x $80) = $1,880.

- Alternatively, if this court is reluctant to authorize $27,000 and recommend it be approved by the Fifth Circuit, Petitioner requests that the Court authorize $7,500, which does not need Circuit approval, and after it is exhausted, Petitioner be allowed, *ex parte*

11

and under seal, to seek additional monies up to the $27,000 and $12,380, reporting to the Court the progress and results of the preliminary work of Drs. Kessner and Seay, and explain what additional work they propose to undertake and its reasonable necessity.

Respectfully submitted,

Michael Mowla
P.O. Box 868
Cedar Hill, TX 75106
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Petitioner

**/s/ Michael Mowla**
**Michael Mowla**

Lydia M.V. Brandt
P.O. Box 326
Farmersville, TX 75442-0326
Phone: 972-699-7020
lydiabrandt566@gmail.com
Texas Bar No. 00795262
Attorney for Petitioner

## V. Certificate of Conference

I certify that on March 30, 2018, I conferred with Ellen Stewart-Klein of the Texas AG's Office, who stated that the Government is opposed to the relief requested in this motion.

**/s/ Michael Mowla**
**Michael Mowla**

## VI. Certificate of Service

I certify that on April 4, 2018, a copy of this document was served on the Government through the ECF-system.

**/s/ Michael Mowla**
**Michael Mowla**